```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ALABAMA
                  NORTHEASTERN DIVISION
```

BARRY K. WILLIAMS,              )
                                )
     Plaintiff,                 )
                                )
vs.                             )    Civil Action No. CV-98-S-611-NE
                                )
TOGO D. WEST, JR., Secretary    )
of Veterans Affairs,            )
                                )
     Defendant.                 )

FILED 99 NOV -9 PM 3:15
N.D. OF ALABAMA

ENTERED NOV - 9 1999

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment as to plaintiff's claim of sex discrimination under 42 U.S.C. § 2000e-16 and plaintiff's motion in limine. Upon consideration of the motions, briefs, evidentiary submissions, and pleadings, this court finds that defendant's motion is due to be granted and plaintiff's motion denied as moot.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The movant bears the initial burden of showing

the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by showing the court there is an absence of evidence to support the non-movant's case. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust*

NOV-09-1999 16:24   256 551 0741   98%   P.05

*Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts

either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTUAL BACKGROUND

Plaintiff was hired as a Contract Specialist by the Department of Veteran Affairs Medical Center (the "VA Medical Center") in Birmingham, Alabama, on April 16, 1995. (See Williams depo. at Exhibit "5.") Prior to his employment with the VA Medical Center, plaintiff worked, from 1986 to 1993, as Supervisory Contract Specialist for the United States Air Force, and, from July of 1993 to April of 1995, as a Contract Administrator for the Defense Logistics Agency. (See Plaintiff's evidentiary materials in opposition to defendant's motion for summary judgment, Exhibit "2" at 4.)

On the date plaintiff was hired by the VA Medical Center, the Birmingham VA Medical Center had merged with the VA Medical Center in Tuscaloosa, Alabama. (See id. Exhibit "1" at 2.) The Birmingham VA Medical Center assumed responsibility for contract maintenance and acquisition in the Tuscaloosa VA facility. (See id.) This merger resulted in considerably more work for employees in Birmingham, because they had to manage contracts in both locations. (See id.)

4

Plaintiff's immediate supervisor at the VA Medical Center was Suzanne Jene, the Chief of Purchasing and Contracting. Jene in fact hired plaintiff from a pool of three applicants, because "he had the best contracting experience compared to all the other applicants at the time." (*Id.* Exhibit "2" at 1.)

From July of 1995 to January of 1996, plaintiff contends Jene subjected him to gender-based discrimination in the form of a hostile work environment. (Complaint ¶ 10.) Beginning in August of 1995, plaintiff maintained a written account of certain confrontations with Jene. (*See* Williams depo. at Exhibit "2.") In sum, these entries reflect close oversight of plaintiff's work performance by Jene, a series of verbal tirades by Jene toward plaintiff, and a refusal by Jene to permit plaintiff to seek training from certain co-workers. (*See id.*)

Plaintiff left his employment with defendant in January of 1996. The events prompting plaintiff's departure occurred primarily on January 5th. Jene returned from leave on that date, and relieved plaintiff from his position as Acting Chief of Purchasing and Contracting. According to plaintiff, Jene was extremely dissatisfied with plaintiff's failure to complete the work she had assigned him. (*See* Williams depo. at 154-55.)

5

Further, plaintiff claims that Jene chastised and berated him repeatedly, finally ordering plaintiff to "get the hell out of [her] office." (*Id.* at 154.)

Soon after January 5th, plaintiff was examined by a physician, who concluded he suffered from "adjustment disorder with mixed emotional features." (Plaintiff's evidentiary materials in opposition to defendant's motion for summary judgment, Exhibit "12" at 3.) The physician further recommended that plaintiff stop working as a Contract Specialist at the VA Medical Center. (*See* Williams depo. at 176-77.)

Plaintiff arrived at work on January 18th to find that his work had been divided amongst other employees, and that he was being relieved of his position with defendant. (*See* Plaintiff's evidentiary materials in opposition to defendant's motion for summary judgment, Exhibit "11" at 6-7.) Plaintiff submitted a letter to James Davidson, Chief of Acquisition and Material Management Services, which informed defendant of his doctor's recommendation. (*See id.* at 8.) The letter also communicated plaintiff's intent to apply for disability retirement. (*See id.*) Davidson caused plaintiff to add the following sentence to this letter: "I do not intend to return to my present position or seek

6

employment in another position within the Department of Veteran Affairs." (*Id.*)

Plaintiff met with an Equal Employment Office Counselor within the Department of Veterans Affairs on February 27, 1999. (*See* Williams depo. Exhibit "1.") The issues plaintiff complained of included "harassment" and "assignment of duties." (*Id.*) Plaintiff targeted January 5, 1996, as the date of discrimination with regard to both issues. (*See id.*)

The Department of Veteran Affairs notified plaintiff on September 20, 1996, that a formal investigation would ensue. (*See id.* Exhibit "3.") In this letter, the agency delineated the issues it planned to investigate and also afforded plaintiff an opportunity to expand the scope of the investigation:

> You were allegedly discriminated against on the basis of sex (male) on January 5, 1996, due to your <u>assignment of duties</u> because you stated that you were <u>assigned more duties than one person could accomplish</u>.
>
> You were allegedly discriminated against on the basis of sex (male) on January 5, 1996, due to <u>harassment</u> when your supervisor returned from annual leave. Ms. Jene called you into her office and <u>loudly berated</u> you for not performing her duties in a timely manner. She concluded the meeting by saying, "<u>Get the hell out of my office</u>."
>
> . . .
>
> The scope of the investigation will be limited to

7

the issues accepted above, and the EEO Investigator is not authorized to inquire into any other matters. <u>If you have any other matters of which you wish to complain, you must see an EEO Counselor immediately</u>.

(*Id.* (emphasis supplied).) Plaintiff did not attempt to expand the scope of the investigation.

Internal investigation of plaintiff's allegations produced the testimony of a number of his co-workers. This testimony reveals a seriously strained working relationship between Jene and plaintiff. Several co-workers stated that Jene continually chastised and berated plaintiff, while never acting that way toward female employees. Relevant to this lawsuit, a number of plaintiff's co-workers testified that Jene treated plaintiff, along with two other male employees (Danny Freeman and Chris Grubbe), differently than female employees. The testimony of Lori Henderson, a Supply Technician, is illustrative:

> Q: Did you ever hear Miss Jene say things to [plaintiff] that you felt were inappropriate, that he was being demeaned or belittled by?
>
> A: Yes.
>
> Q: On how many occasions?
>
> A: I can't really say how many, but on several, many occasions I would say, many occasions.
>
> . . .
>
> Q: Did you ever hear her holler or scream or do things

8

    like that to other males?

A: Yes. Two other males in the office.

Q: How about females?

A: No.

Q: Never heard it toward females?

A: No. Never.

(Plaintiff's evidentiary materials in opposition to defendant's motion for summary judgment, Exhibit "4" at 1-2.)

    The above testimony, however, did not go uncontroverted during the internal investigation. Mary Hudson, an Accounting Technician, reiterated Jene's treatment of plaintiff, but also stated that he was not alone in his complaints about Jene:

> Q: Let's go into the next issue about the hostile environment. He said that Miss Jene had a habit of screaming at him, not only him as a male, but other male employees. She treated female employees differently, did not holler and scream at them, and that he just felt that she was anti-male, that no matter what he did it was never right. Can you speak on that?
>
> A: I cannot speak to the fact as far as the male/female difference, because I, myself, had some differences with her. Now she did not yell and scream at me as such. She did talk down to me as if I were a child on several occasions. I will say that. And I do know that there were several of the other female employees, not here at the Tuscaloosa VA, but at the Birmingham VA that had confrontations with her also. So I cannot say for sure that she treated him as such because he was a male. She did, in fact, treat him in a disrespectful manner, in my opinion.

(*Id.* Exhibit "3" at 1-2.) Jene's testimony during the internal investigation reveals that she is a task-oriented, strict supervisor. She stated she was critical of plaintiff because he had prior experience in the field and, consequently, "was expected to do more work than the trainees." (*Id.* Exhibit "2" at 2.) She noted that Mr. Williams' failure to keep up with his workload resulted in certain confrontations with him. Jene insisted, however, that neither plaintiff, nor male employees in general, were singled out for criticism or reprimand:

> Q: There was a very serious allegation also made by several witnesses about you and that allegation was the fact that you had a tendency to holler and scream at males and not at females.
>
> A: I tend to disagree with that. I tend to holler at people, if that's the word you want to use, who do not do their work. I don't care whether they are male or female, black or white, you need to do the work.

(*Id.* Exhibit "2" at 9.) The internal investigation resulted in a finding of "no discrimination" on February 11, 1997. (*See id.* Exhibit "12" at 16.)

Plaintiff filed this action on March 17, 1998, asserting that defendant created a hostile work environment based on Jene's disparate treatment of him and other male employees. Plaintiff argued this hostile work environment produced a violation of 42

10

U.S.C. § 2000e-16(a), which states that all <u>personnel actions</u> affecting those employed by the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin." Specifically, plaintiff alleged he was "discriminated against on the basis of his sex in job assignments, training, discipline and discharge." (Complaint ¶ 19.)

Defendant's answer contained a number of affirmative defenses, including the argument that "[p]laintiff failed to administratively raise and exhaust any issues pertaining to <u>discipline or discharge/termination</u>." (Answer at 4 (emphasis supplied).) In an order entered on May 25, 1999, this court denied defendant's motion to amend its answer to assert that plaintiff failed to exhaust his administrative remedies for <u>all</u> the claims brought in his complaint. (Order of May 25, 1999, at 5.)

### III. DISCUSSION

**A. Did Plaintiff Properly Exhaust his Administrative Remedies?**

Regulations promulgated pursuant to 42 U.S.C. § 2000e-16 provide that:

> [a]n aggrieved person <u>must</u> initiate contact with a Counselor <u>within 45 days</u> of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a) (emphasis supplied). As recorded by the

11

Equal Employment Office Counselor, plaintiff alleged he was discriminated against on January 5, 1996. Plaintiff did not have his initial contact with the EEO counselor until February 27, 1996, however, some 52 days after January 5th. Therefore, plaintiff failed to comply with the technical requirements of 29 C.F.R. § 1614.105(a) by filing more than 45 days after the allegedly discriminatory activity occurred. *See Janneh v. Runyon*, 932 F. Supp. 412, 416 (N.D.N.Y. 1996) (failure to comply with this regulation precludes a civil action for discrimination).

The United States Supreme Court has held, however, that a plaintiff's failure to comply with or exhaust administrative remedies is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (noting that administrative exhaustion is not a jurisdictional requirement); *see also Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) ("We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.").

Because failure to exhaust administrative remedies is treated

12

like a statute of limitations defense, it will be deemed waived by a defendant unless pled in the form of an affirmative defense pursuant to Federal Rule of Civil Procedure 8(c). *See Bartlett v. Fruehauf Corporation*, 642 F. Supp. 954, 957 (W.D.N.C. 1986) ("The Plaintiff also argues that the Defendant cannot assert the defense of untimeliness since it is in the nature of an affirmative statute of limitations defense which the Defendant waived ... by not raising it in its Answer."). In this case, defendant adequately raised failure to exhaust administrative remedies as an affirmative defense to any claim made by plaintiff relating to discriminatory discipline or discharge. In turn, this court rejected defendant's attempt to amend its answer to include "failure to exhaust" as an affirmative defense to <u>all</u> of plaintiff's claims.

Plaintiff's failure to comply with the forty-five day time limit for initiating contact with an Equal Employment Office Counselor renders his claims for discriminatory discharge and discipline without merit. Alternatively, plaintiff's articulation of alleged discrimination by defendant, as recorded by the Equal Employment Office, does not include charges of discriminatory discipline or discharge. Plaintiff chose to focus on "assignment of duties" and "harassment" in his initial meeting with the Equal

13

Employment Opportunity Counselor.

The court recognizes Eleventh Circuit precedent indicating that the issues that may be raised in a Title VII complaint are those raised during the administrative process along with "those issues that may reasonably be expected to grow out of the administrative investigation of [plaintiff's] claims." *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985). The Equal Employment Office, however, made very clear to plaintiff that it was limiting its investigation to the two allegedly discriminatory acts that occurred on January 5, 1996. The agency gave plaintiff an opportunity to bring up other grounds for complaint, including the events surrounding his separation from the VA Medical Center on January 18th. Plaintiff's failure either to object to the issues spelled out by the agency, or to mention issues relating to constructive discharge or discriminatory discipline, renders these claims outside of the scope of the administrative investigation. Thus, they are not actionable in this forum. *See generally Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995).

B.  **Does Alleged Discrimination regarding Job Assignments and Training Constitute a "Personnel Action" under 42 U.S.C. § 2000e-16(a)?**

Based on his complaint and the discussion *supra*, plaintiff's

14

lone remaining claims are that defendant discriminated against him on the basis of his sex in <u>job assignments</u> and <u>training</u>, in violation of 42 U.S.C. § 2000e-16(a). In *Page v. Bolger*, 645 F.2d 227 (4th Cir. 1981) (*en banc*), the Fourth Circuit addressed the scope of "personnel action" under 42 U.S.C. § 2000e-16(a):

> Disparate treatment theory as it has emerged in application of this and comparable provisions of Title VII ... has consistently focused on the question whether there has been discrimination in what could be characterized as <u>ultimate employment decisions</u> such as <u>hiring</u>, <u>granting leave</u>, <u>discharging</u>, <u>promoting</u>, and <u>compensating</u>. This is the general level of decision we think contemplated by the term "personnel action" in [42 U.S.C. § 2000e-16(a)].

*Id.* at 233 (emphasis supplied). The *Page* court further noted that "interlocutory or mediate [employment] decisions ... were not intended to fall within the direct proscriptions" of this statute. *Id.* (concluding that "steps in a process" that eventually lead to an ultimate employment decision do not constitute personnel actions).

While the Eleventh Circuit has not expressly defined what constitutes a "personnel action" under 42 U.S.C. § 2000e-16(a), it has endorsed the *Page* decision, and recognized its continued vitality in the federal employment sector. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 n.2 (11th Cir. 1998)

15

(distinguishing scope of "unlawful employment practice" in 42 U.S.C. § 2000e-3(a) from "personnel action" in 42 U.S.C. § 2000e-16(a)); *Ferguson v. Veterans Administration*, 723 F.2d 871, 872 (11th Cir. 1984) (adopting the reasoning and conclusions made in *Page* without elaboration).

Plaintiff's remaining claims focus on the type of "interlocutory" or "mediate" employment decisions that the *Page* court concluded were not encompassed by the term "personnel action" in 42 U.S.C. § 2000e-16(a). Assuming for the sake of discussion that Jene did in fact allocate too many assignments to plaintiff, and that she refused to afford him certain training, these points do not state an actionable claim under 42 U.S.C. § 2000e-16(a). Therefore, summary judgment on behalf of defendant is warranted.

### IV. PLAINTIFF'S MOTION IN LIMINE

Since this court has concluded that defendant's motion for summary judgment is due to be granted, plaintiff's motion in limine is due to be denied as moot.

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this the 9th day of November, 1999.

_____
United States District Judge

17